No. _____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### IN RE CITIMORTGAGE, INC. HOME AFFORDABLE MODIFICATION PROGRAM ("HAMP") LITIGATION

---

### PLAINTIFFS' PETITION FOR PERMISSION TO APPEAL FROM ORDER DENYING CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

---

Related to Order Denying Plaintiffs' Motion for Class Certification and Denying Plaintiffs' Motions to Strike Testimony, and Defendant's Motion to Strike the Class Certification Report of Ian Ayres
Entered October 7, 2013
By the United States District Court for the Central District of California
Case No. ML-11-2274 DSF (PLAx)
Honorable Dale S. Fischer

---

DAVID E. AZAR (SBN 218319)
MILBERG LLP
One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Tel: (213) 617-1200
Fax: (213) 617-1975
Email: dazar@milberg.com

GARY KLEIN
KLEIN KAVANAGH COSTELLO, LLP
85 Merrimac Street, 4th Floor
Boston, MA 02114
Tel: (617) 357-5500
Fax: (617) 357-5030
Email: klein@kkcllp.com

*Counsel for Plaintiffs-Petitioners*
*(additional counsel listed on signature block)*

## DISCLOSURE STATEMENT

The undersigned counsel of record for Plaintiffs-Petitioners Hanna Bernard, Audrey Pierson, Hugh Pierson, Balbir Singh, Elizabeth Daniel, Leslie Barry, John Petrides, Maria Petrides, Robert Coons, Raeanda Coons, Karen Grover, Daniel Korzep, Joann Gastineau, Juan Silva, Elizabeth Silva, David Derosa, Erin Logan, James Garcia, Jennifer Garcia, Minnie Glover, Renee Johnson, Stephen Johnson, and William Whiting hereby furnishes the following information in accordance with Rule 26.1 of the Federal Rules of Appellate Procedure:

1.     Petitioners are not a nongovernmental corporate party.


Date: October 21, 2013              _____*s/ Gary Klein*_____
                                                         GARY KLEIN

Table of Contents

Page

I.    INTRODUCTION ............................................................1

II.   SUMMARY OF ARGUMENT ..........................................3

III.  QUESTIONS PRESENTED ............................................4

IV.   RELIEF SOUGHT...........................................................4

V.    STATEMENT OF FACTS ...............................................5

      A.   Description of the HAMP Program......................5

      B.   The TPP Agreement and its Requirement for Timely Decisions
           on Permanent Modification....................5

      C.   The Proposed Classes and the Claims at Issue .................7

      D.   The District Court Decision ..................................8

VI.   STANDARD OF REVIEW ............................................10

VII.  ARGUMENT.................................................................11

      A.   Absent reversal or remand at this time, this case is effectively
           over for the vast majority of affected homeowners. ...........11

      B.   The District Court's decision is internally inconsistent .....................13

      C.   The District Court's decision ignores the implications of this
           Court's precedents with respect to the predominance
           requirement of Rule 23(b)(3) .............................................14

      D.   There are at least four uniform contract-law based resolutions
           applicable to the common question....................................16

      E.   The District Court also does not meaningfully evaluate a variety
           of issues necessary to this Court's review...........................19

VIII. CONCLUSION...............................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Barnes v. AT&T Pension Benefit Plan*,
  270 F.R.D. 488 (N.D. Cal. 2010)........................................................20

*Chamberlan v. Ford Motor Co.*,
  402 F. 3d. 952 (9th Cir. 2005) .....................................................10, 11

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ......................................................................16

*Corvello v. Wells Fargo Bank, NA*,
  728 F.3d 878 (9th Cir. 2013), *amended by* No. 11-16234, 2013 U.S. App.
  LEXIS 19453 (9th Cir. Sept. 23, 2013) .........................................3, 14

*Floyd v. City of New York*,
  283 F.R.D. 153 (S.D.N.Y. 2012) .......................................................20

*Gaudin v. Saxon Mortg. Servs., Inc.*,
  No. 11-cv-01663-JST, 2013 WL 4029043 (N.D. Cal. Aug. 5, 2013),
  *motion for leave to appeal docketed*, No. 13-80186 (9th Cir. Aug. 21,
  2013) ...................................................................................................4

*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F. 3d 402 (6th Cir. 2012) ...........................................................20

*Leyva v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013) ............................................................16

*Stinson v. City of New York*,
  282 F.R.D. 360 (S.D.N.Y. 2012) .......................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)........................................................11, 14, 15

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ............................................................14

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
  594 F. 3d 1087 (9th Cir. 2010) ........................................................................16

*Young v. Wells Fargo, N.A.*,
  717 F.3d 224 (1st Cir. 2013).........................................................................5, 14

STATE CASES

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937, 81 Cal. Rptr. 3d 282, 189 P.3d 285 (2008)...............................17

*Midland Pac. Bldg. Corp. v. King*,
  157 Cal. App. 4th 264 (2007) .........................................................................18

FEDERAL STATUTES

28 U.S.C. § 1404........................................................................................3

28 U.S.C. § 1407........................................................................................12

RULES

Federal Rule of Civil Procedure 23 ............................................... *passim*

OTHER AUTHORITIES

Jennifer B. McKim, *Promised Relief, Many Instead Deeper in Debt,* Boston
  Globe, Mar. 7, 2011 ....................................................................................2

Restatement (Second) of Contracts §§ 84 & 246 (1981)........................................18

Williston on Contracts (3rd) § 63:9 (1979) ...........................................................18

iii

## I.     INTRODUCTION

In 2009 and 2010, tens of thousands of homeowners entered form agreements with CitiMortgage Inc. ("Citi"), known as Trial Period Plans ("TPP Agreements") under the federal Home Affordable Modification Program ("HAMP"). These homeowners, struggling with economic forces beyond their control, were seeking mortgage modifications promised by Citi under the aegis of a federal program. Rather than help, Citi designed policies and procedures to thwart HAMP, to prevent homeowner modifications, and to accelerate collection of late charges and delinquency fees. Due to Citi's malfeasance and inaction, at the end of their TPP Agreements, class members did not receive the permanent modifications that Citi promised them and they were typically many thousands of dollars further behind on their mortgages than when they first sought Citi's help.

Each TPP Agreement contained a core promise—that Citi would evaluate a borrower for a permanent modification during a contractually defined time period (the "Trial Period") and render a yes or no decision by a specific contractual deadline (the "Modification Effective Date" or "MED"). The homeowners who obtained a TPP depended on this promise as the central pillar of their plan to keep their homes and to regain their financial footing. Instead of honoring its promises, Citi left homeowners in limbo by failing to act by the contractual time deadline and often for many months thereafter. Citi's lack of timely action caused borrowers

1

more harm than just the uncertainty associated with not knowing whether Citi would provide a permanently affordable mortgage modification. During the limbo period, the affected homeowners were charged additional fees and interest in amounts that were not permitted by the TPP Agreement, and qualifying documents became stale under program rules. Citi then denied modifications to many homeowners on pretextual grounds.[1] Regardless of whether they were ultimately denied, however, every borrower who did not receive a timely decision was harmed by Citi's delay.

As the District Court held, the core common question for class certification is whether the TPP Agreement contractually binds Citi to act within the Trial Period. *See* Memorandum Order Denying Plaintiffs' Motion for Class Certification, Denying Plaintiffs' Motions to Strike Testimony, and Denying Defendant's Motion to Strike the Class Certification Report of Ian Ayres ("Opinion") at 6 (Ex. 1). ECF No. 515. However, the Court then shrank from analyzing the legal principles available to generate common answers to this common question. For the reasons discussed below, absent review now, there can never be appellate review of the District Court's decision and tens of thousands of homeowners will be denied relief on meritorious claims.

---

[1] *See, e.g.*, Jennifer B. McKim, *Promised Relief, Many Instead Deeper in Debt,* Boston Globe, Mar. 7, 2011. *See also* ECF No. 503 at 6-7, § II.D. (Karen Grover example).

2

## II.    SUMMARY OF ARGUMENT

In light of this Court's precedents, it is now clear that the TPP Agreement is an enforceable contract. *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013), *amended by* No. 11-16234, 2013 U.S. App. LEXIS 19453 (9th Cir. Sept. 23, 2013). Because the TPP Agreement is undisputedly a form,[2] it follows inescapably that the normative rules applicable to contractual construction may be used to reach common answers about the meaning and import of specific contract language. The District Court, in its Opinion, failed to make that necessary analysis. Had it done so, it would have found that the common question present here can be resolved, based on common principles of law, with common answers. The individual questions the District Court finds predominant are entirely irrelevant to determining liability for the class.

Review is required now, pursuant to Rule 23(f), because absent review, financially struggling homeowners who cannot afford individual representation are at ongoing risk of foreclosure despite the promises of the TPP Agreement, and many will lose their opportunity to have their mortgages modified. All will lose their right to damages and/or account corrections. Moreover, because this is a multidistrict litigation proceeding under 28 U.S.C. § 1404 requiring remand of

---

[2] The TPP Agreement is attached as Ex. 2.  While there are some minor variations in the language of the TPP Agreement Citi used during the relevant time period, none of the purported variations were material to the District Court's conclusions.

multiple constituent cases to a variety of jurisdictions for trial, appellate review of the class certification decision will be unavailable in any court if leave to appeal is not granted on this motion.[3]

## III.    QUESTIONS PRESENTED

Whether this Court should grant leave to appeal pursuant to Rule 23(f) where the Court's decision on class certification is internally inconsistent, and fails to evaluate whether contract law provides a common answer to an uncontested common question that would resolve those issues for the class.

Whether this Court should grant leave to appeal pursuant to Rule 23(f) where failure to review now will prevent appellate review of the District Court's decision.

## IV.    RELIEF SOUGHT

Plaintiffs respectfully request this Court grant leave to appeal under Federal Rule of Civil Procedure 23(f) and set a schedule for full briefing on the merits. In the alternative, Plaintiffs request that this Court summarily reverse and remand to the District Court for further analysis under more rigorous standards.

---

[3] Another Court in the Ninth Circuit recently granted class certification in a similar case grounded in breach of a TPP Agreement. Defendant there is seeking leave to appeal. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663-JST, 2013 WL 4029043 (N.D. Cal. Aug. 5, 2013), *motion for leave to appeal docketed*, No. 13-80186 (9th Cir. Aug. 21, 2013).

## V.    STATEMENT OF FACTS

### A.    Description of the HAMP Program

HAMP was an effort to mitigate the effects of the 2008 financial crisis and was designed "to offer loan modifications to eligible borrowers with the goal of 'reducing [their] mortgage payments to sustainable levels . . . .'" *Young v. Wells Fargo, N.A.*, 717 F.3d 224, 228 (1st Cir. 2013) (citation omitted). To that end, Citi was required as a condition of acceptance of $45 billion in bailout funds "'to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program.'" *Id*. at 229 (citation omitted). Plaintiffs here do not seek to enforce Citi's agreement with the government, but rather the TPP Agreements that Citi subsequently made with each member of the class.

### B.    The TPP Agreement and its Requirement for Timely Decisions on Permanent Modification

The promise on which Plaintiffs' claims rest is set out in the very first sentence of the TPP Agreement:

> If I am in compliance with this Trial Period Plan (the "Plan"), and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3 . . . .

Ex. 2, TPP at p. 1, ¶ 1.

The TPP Agreement is expressly a contract of finite duration. The "Trial Period" is defined on page 2 of the TPP form as "the period (the 'Trial Period')

commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the 'Modification Effective Date') or (ii) termination of this Plan . . . ." TPP at p. 2, § 2. The Trial Period thus closed no later than a specific date certain: the Modification Effective Date. Underscoring this point, the TPP Agreement provides that "TIME IS OF THE ESSENCE." TPP at p. 2, § 2A (emphasis in original).

Under the terms of the TPP Agreement, the borrowers' obligations are twofold. First, the borrower must make trial plan payments on the schedule provided in the TPP Agreement. Plaintiffs have defined the class to include only those borrowers who met this obligation. ECF No. 316. Second, under the terms of the TPP Agreement, the representations that the borrower made to obtain a TPP must continue to be true. TPP at p. 1, § 1.

The TPP Agreement expressly provides that Citi will evaluate the truth of the borrower's representations by the MED: "If prior to the Modification Effective Date . . . the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate." TPP at p. 2, § 2.F(iii). The plain meaning of these words is that absent a timely determination, the Loan Documents *will be modified*.[4]

---

[4] Although Treasury Department Guidance is not dispositive on the meaning of the TPP Agreement, Treasury expected servicers to act by the MED: "The servicer must consider the Trial Period Plan to have expired if the borrower has not

The performance required by Citi within this finite period is also specifically stated. Citi is to provide a "signed copy of this Plan" or a "written notice that [the borrower] do[es] not qualify for the Offer." *Id.* at p. 1.

Crucially, a timely denial would have allowed borrowers to find an alternate plan to avoid foreclosure as well as to appeal the denial or seek other mandatory foreclosure alternatives under the Making Home Affordable Program, a process that allows for fewer options as the outstanding balance grows. *See* ECF No. 317-1 (Azar Decl. Ex. 3) U.S. Treasury, Supplemental Directive 09-01, at 15, 18 (requiring immediate review for foreclosure alternatives if HAMP modification is denied).

### C.     The Proposed Classes and the Claims at Issue

Plaintiffs seek certification of eight statewide classes of individuals (for residents of California, Florida, Illinois, Iowa, Maryland, Massachusetts, New Jersey and Pennsylvania) whose home mortgage loans have been serviced by Citi and who, since April 13, 2009, have entered into a HAMP TPP Agreement with Citi and made all payments required by their TPP Agreement ("HAMP TPP Classes"). Excluded from the HAMP TPP Classes are borrowers to whom Citi timely tendered either:  a Home Affordable Modification Agreement that complied

---

submitted the required documentation by the end of the trial period." U.S. Treasury Dept., Supplemental Directive 09-08.  ECF No. 317-3 (Azar Decl. Ex. 13).

with HAMP rules; or a written denial of eligibility consistent with the terms of the trial period agreement.[5]  ECF No. 316.

Plaintiffs sought certification of claims for breach of contract, promissory estoppel and breach of the implied covenant of good faith and fair dealing under the law of each of the eight states for which class certification is sought, together with certification of claims under state consumer protection laws (six states), the Consumer Credit Reporting Agencies Act ("CCRAA") (California), and state fair debt collection laws (Maryland and Iowa).[6]

### D.    The District Court Decision

The District Court's class certification analysis covers just four pages of its nine page October 7, 2013 in chambers memorandum resolving the Plaintiffs' motion for class certification and three pending motions to strike expert evidence. The Court first found that the Plaintiffs satisfy the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). The Opinion recognizes that "the common question of law is whether Citi breached the TPP by failing to provide a permanent modification or a written denial by the Modification Effective Date

---

[5] For the purposes of the class definition, "timely" was defined as "before the end of the 'Trial Period' defined in borrower's Trial Period Plan."  Plaintiffs have omitted here certain other exclusions to the class that are not germane to this motion.

[6] Plaintiffs presented evidence to the District Court on the uniformity of the laws of the states in question. ECF No. 317-2 (Azar Decl. Ex. 12); ECF No. 390-1 (Azar Reply Decl. Ex. 57).

(MED)." The District Court holds that "[r]esolution of this question potentially would 'resolve an issue that is *central* to the validity of each one of the claims in one stroke." Opinion at 6 (emphasis added). The District Court concludes that Citi conceded this common question. Opinion at 6, n.4.

However, without addressing other factors relevant under Rule 23(a) (numerosity, typicality, adequacy), the District Court goes on to deny certification under Rule 23(b)(1),[7] (b)(2)[8] and (b)(3). With respect to the (b)(3) issues, the District Court evaluated only the predominance requirement.[9] The District Court stated, without relevant explanation:

> [D]etermination of the deadline by which Citi was required to provide either a permanent modification or a written denial cannot be made simply by identifying the [Modification Effective Date] as stated in the TPP. The deadline may also have been affected by the parties' course of conduct, changes in income, inaccurately or incompletely reported income, oral and written representations regarding

---

[7] The parties made only summary arguments with respect to (b)(1), in part because the District Court limited the length of the briefs on class certification. ECF No. 312.

[8] For the purposes of (b)(2), the Court concludes without analysis that for the purposes of injunctive relief an "individualized inquiry would be necessary to determine" the amount of interest, fees and charges that were improperly assessed. The Court does not address Plaintiffs' position that individual inquiry is not necessary in light of uniform algorithms that can be applied to Citi's account records, records that show each charge to the account, its amount and the date of its imposition. ECF No. 317-1, Ex. 4; ECF No. 385-1 (Ayres Report ¶ 88; Ayres Reply ¶¶ 39, 40 (with example at Appendix 2)).

[9] There is one sentence in the Opinion on superiority that is simply an extension of the District Court's predominance analysis.

documentation still needed and other modification options, applicable
Treasury Directives, and other considerations.

Opinion at 8.

The Opinion does not cite any provision of the TPP Agreement or a
principle of contract interpretation under which the factors it lists override the
expressly stated deadline for Citi to act. The Court does not evaluate whether the
plain language of the contract, or black letter legal principles such as the parol
evidence rule and the statute of frauds obviate, as a matter of law, the factual
inquiries it considers predominant. The District Court assumes that the contract
requires evaluation of an "incredible variety of individual issues." Opinion at 9.

The Opinion goes on to reject predominance on Plaintiffs' promissory
estoppel, implied covenant and consumer protection claims without any explicit
findings or explanation to justify its view that Citi's written promises can be varied
by the factors it describes. The Opinion entirely fails to discuss certification of the
Plaintiffs' CCRAA and state debt collection claims.

## VI.    STANDARD OF REVIEW

This Court exercises "unfettered discretion" to grant a Rule 23(f) petition for
leave to appeal a class certification order. *Chamberlan v. Ford Motor Co.*, 402 F.
3d. 952, 957 (9th Cir. 2005). Discretion is guided by several factors. One is
whether there is a "death-knell" situation for the plaintiff or defendant that is
independent of the merits of the underlying claims. *Id*. at 959.  Rule 23(f) review is

also appropriate 1) when "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review" or 2) when "the district court's class certification decision is manifestly erroneous." *Id*. These factors are not a "rigid test." *Id*. at 960. Rather, the Court may grant a Rule 23(f) petition based on "any consideration that [it] finds persuasive." Fed. R. Civ. P. 23 advisory committee notes on 1998 amendments, Subdivision (f). The District Court's Order meets the applicable standards and warrants review at this time.

## VII. ARGUMENT

### A. Absent reversal or remand at this time, this case is effectively over for the vast majority of affected homeowners

This proceeding governs complex multidistrict litigation comprising twelve actions filed in ten courts. The legal rights of tens of thousands of homeowners are at stake. The District Court's decision is replete with error, both on the law and on the rigorous process mandated by controlling precedent, including *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), for evaluating certifiability under Rule 23. The Opinion contains no analysis of three of the four requirements under Rule 23(a), limited analysis of the contract itself, and virtually no analysis of the majority of claims for which Plaintiffs sought certification. Leave to appeal is warranted to correct manifest error, to enable this Court to engage in plenary review and/or to remand for an appropriate set of relevant findings and

11

conclusions, to direct the District Court to provide for rigorous review of whether there are common legal answers on the merits of each claim and to provide fairness for homeowners struggling with a callous financial institution.

Absent leave to appeal, this case will be effectively over for thousands of homeowners who have no resources to engage counsel to prosecute their claims individually. If they had sufficient resources to pay counsel, it is unlikely that they would need mortgage modification relief in the first instance. Only with common discovery and an opportunity for full evaluation of class certification is there any chance for a fair resolution for the homeowners who are not Plaintiffs here.[10]

Finally, because this is a multidistrict litigation proceeding, trial must take place in the transferor courts after remand. 28 U.S.C. § 1407; *Lexecon, Inc.* v. *Milberg Weiss Bershad Hynes* & *Lerach,* 523 U.S. 26, 33-34 (1998). Absent review now, the individual cases comprising this MDL proceeding will be remanded. Neither the statute (28 U.S.C. § 1407) nor the MDL procedural rules provide a process for later reaggregating individual cases for the purposes of appeal of the class certification decision.[11]  Thus, absent review now, while the

---

[10] The District Court recognized the number of cases that have been filed *pro se* or with inadequate attorney representation on these issues, resulting in inadequate or incomplete legal arguments and records in state and federal courts across the country. *See In re CitiMortgage, Inc.*, No. ML 11-2274 DSF (PLAx), 2012 WL 1931030, at *1 n.1 (C.D. Cal. Apr. 17, 2012).

[11] A judicially created process for reaggregation would also be impracticable since, after remand, individual cases will proceed at different paces to trial.

cases are aggregated, there is no opportunity for appellate relief with respect to class certification.

### B.    The District Court's decision is internally inconsistent

In its Opinion, the District Court correctly concludes that the answer to the common question of whether each class member is entitled to a decision at or before the end of the Trial Period is capable of driving resolution of the litigation. Opinion at 6. However, its predominance analysis is implicitly grounded in a *different* common question, i.e., whether each borrower was entitled to a loan modification under the TPP Agreement at the MED.

This is an important distinction on which the District Court's decision is manifestly erroneous. Whether Citi was required to act by the end of the Trial Period is a simple binary question amenable to resolution by a "yes" or "no" decision in light of black letter principles of contract interpretation. The factors which the District Court considers relevant, such as "oral and written representations regarding documentation still needed and other modification options," "applicable Treasury Directives," and unspecified "other considerations" may arguably have been determinative of whether Citi was contractually obligated *to provide or deny a permanent modification* by the MED, but they have no place in determining the common question identified by the Court, whether Citi was obligated to make the promised decision (to grant or deny) by the MED.

Having identified the common question as one that would drive resolution of the case for the class, the District Court simply failed to follow through with the predominance analysis associated with that question.

### C. The District Court's decision ignores the implications of this Court's precedents with respect to the predominance requirement of Rule 23(b)(3)

The District Court failed to make the appropriate contract-based merits analysis required to evaluate the case for class certification. *Corvello*, *supra*, compels a conclusion that the TPP Agreement is a form contract subject to black letter principles of contractual construction. *See also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). Another Court of Appeals recently concluded that absent enforcement of the contractual time deadline "defendants' interpretation would permit them to exercise an unfettered right to withhold a permanent modification offer for an uncertain period of time after the modification effective date has passed, thereby erasing the benefits to the plaintiff of her compliance with the TPP." *Young v. Wells Fargo, N.A.*, 717 F.3d at 235.

The common question the District Court identified—whether the TPP requires a timely decision—predominates because its resolution turns, not on distinct and individual factual issues, but rather on questions of law about the proper legal construction to be given to the TPP. The Supreme Court's decision in *Wal-Mart* requires rigorous analysis of merits questions necessary to resolve class

14

certification. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551-52 (rigorous analysis of class certification prerequisites is required, even when such analysis touches on the merits). "'What matters to class certification . . . is not the raising of common "questions"—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* at 2551 (citation omitted). It follows that the District Court was required to evaluate whether contract law, rather than factual inquiry, provides those common answers.

Thus the District Court was mandated to consider basic principles of contract law including, without limitation, the statute of frauds with respect to purported oral extensions of the Trial Period, the applicability of the parol evidence rule to purported oral representations inconsistent with the contract language,[12] and, most importantly the plain language of the contract with respect to Citi's deadline to act. By failing to do so, the court below failed to recognize that contract principles supply common answers as a matter of law. Individual questions do not predominate when they are irrelevant to the claims at issue under common legal principles governing the form contract.

---

[12] Plaintiffs presented evidence of the uniformity of the relevant state law with respect to these issues. ECF No. 390-1 (Azar Reply Decl. Ex. 56).

Similarly, there is manifest error in the District Court's brief treatment of issues of damages associated with its predominance analysis. Opinion at 8-9. Where common questions regarding liability predominate, the predominance requirement is satisfied even if individual damages issues remain. *See Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F. 3d 1087, 1089 (9th Cir. 2010) (class certification not precluded by the "potential existence of individualized damage assessments"). The District Court failed to recognize that in *Leyva*, this Court concluded that the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013) does not change this longstanding principle. *Leyva*, 716 F.3d at 514.[13]

### D.    There are at least four uniform contract-law based resolutions applicable to the common question

While Plaintiffs are not required to establish on this motion for leave to appeal that they would prevail in the resulting appeal, it is clear that the District Court failed to consider the core questions of law that emerge from application of black letter principles of contract interpretation to the common question at issue. When applying these principles it is clear that the common question predominates.

---

[13] Even absent the need to do so, Plaintiffs made an extensive showing that damage questions could be resolved by algorithms employing data in Citi's records.  ECF No. 503 at 7-9; ECF No. 389 at 5.

Moreover, the resolution of each common contract principle is itself a "common question of law" that must be factored into the evaluation of whether common questions "predominate" over individual issues under Rule 23(b)(3).

First, there is an estoppel or waiver under the plain language of the contract. Each TPP Agreement provides that, "If prior to the Modification Effective Date . . . the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Plan will terminate." TPP at p. 2, § 2.F(iii). Under the plain language of this contract provision, once the MED passes, Citi loses the right to assert that the borrower's representations are not true and correct, including the representations concerning the documentation requirements. *See, e.g.*, *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 81 Cal. Rptr. 3d 282, 189 P.3d 285 (2008) (when the language of a contract is clear and not absurd, it will be followed). Once Citi's right to determine the validity of the borrower's representations expires by passage of its deadline to act, the purported individual questions that the District Court asserts are relevant, such as changes to borrower income, evaporate.

Second, Citi accepted performance after the MED from class members in the form of ongoing payments in the TPP amount. It is black letter contract law that by accepting a counterparty's ongoing performance (here TPP payments in the TPP amount) after its own contractual deadline to perform, Citi waived its right to

17

assert that the borrowers failed to meet any conditions precedent in the contract. *See* Restatement (Second) of Contracts §§ 84 & 246 (1981); Williston on Contracts (3rd) § 63:9 (1979).[14] This too is a contract principle that obviates the individual issues that the District Court concludes predominate.

Third, irrespective of whether they were entitled to a permanent modification at the MED, every class member was damaged by Citi's delayed performance, including, without limitation, by accrued interest charges, fees and costs that were placed on their accounts in the time period between the MED and the later date on which Citi ultimately rendered a decision on whether to grant a permanent modification.[15] Expert opinion establishes that those assessments can be identified by algorithm, using common procedures, from among the charges in each borrower's account records. ECF No. 317-1, Ex. 4; ECF No. 385-1 (Ayres Report, ¶ 88; Ayres Reply ¶¶ 39, 40 (with example at Appendix 2)). Moreover, even if no compensable economic damages resulted, black letter contract law recognizes a common right to nominal damages. *See, e.g.*, *Midland Pac. Bldg. Corp. v. King*, 157 Cal. App. 4th 264, 275 (2007) ("in the absence of a showing of actual damages, nominal damages are available"). Whether the class members

---

[14] Relevant state law is uniform on this issue and consistent with the restatement. ECF No. 390-1 (Azar Reply Decl. Ex. 55).

[15] The TPP Agreement governs special treatment of partial payments, but that special treatment is limited to the Trial Period. TPP at p. 2, §§ 2.D, 2.E.

share a common right to delay damages (or nominal damages) as a matter of law is another common question that yields a common legal answer that was not considered by the District Court in its predominance analysis.

Finally, it is possible that the Court can conclude that, as a matter of law, there is no contractual deadline for Citi's performance. "No" would also be a common answer that eliminates individual questions about borrower performance.

Each of these common bases in contract law to resolve issues of the necessary borrower performance was presented to the District Court. None were evaluated in its predominance analysis. This was manifest error. Contract law provides a sufficient common basis to resolve the common question of Citi's breach by failure to take timely action as a matter of law and obviates the need to determine individual issues.

### E. The District Court also does not meaningfully evaluate a variety of issues necessary to this Court's review

The District Court's decision makes no meaningful findings of any kind with respect to many of the borrowers' claims, including promissory estoppel, breach of the implied covenant of good faith and fair dealing and state consumer protection violations. The Opinion does not even mention the CCRAA and state fair debt collection, on which certification was also sought. Finally, the Opinion failed to

19

meaningfully review certification under Rule 23(b)(1) or (b)(2).[16] These failures require leave to appeal, followed by reversal and remand to mandate for the review required by Rule 23.

## VIII. CONCLUSION

For the foregoing reasons, leave to appeal should be granted for full argument on the merits of the District Court's class certification decision. In the alternative, the Court should summarily reverse with direction to the District Court to engage in a more complete analysis.

Date: October 21, 2013          KLEIN KAVANAGH COSTELLO, LLP
                                GARY KLEIN



                                          *s/ Gary Klein*
                                          GARY KLEIN

---

[16] *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 496 (N.D. Cal. 2010) (certification of Rule 23(b)(1) class was appropriate because there was a risk that individual litigation would result in different conclusions). A classwide injunction can issue even where the magnitude and existence of the impact of Citi's practices varies by class member. *Floyd v. City of New York*, 283 F.R.D. 153, 173 (S.D.N.Y. 2012); *Stinson v. City of New York*, 282 F.R.D. 360, 381 (S.D.N.Y. 2012) (a class is certifiable under both (b)(2) and (b)(3) where the class is seeking both monetary relief and injunctive relief). Certification of a contract claim under Rule 23(b)(2) is appropriate to resolve a dispute about the meaning of a contract. *Gooch v. Life Investors Ins. Co. of Am.*, 672 F. 3d 402, 427 (6th Cir. 2012) ("'What matters to class certification . . . [is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' . . . Resolving a dispute over contract interpretation does that . . . .") (citation omitted).

85 Merrimac Street, 4th Floor
Boston, MA 02114
Telephone: (617) 357-5500
Facsimile: (617) 357-5030
klein@kkcllp.com
kavanagh@kkcllp.com
costello@kkcllp.com
neale@kkcllp.com

MILBERG LLP
DAVID E. AZAR
NICOLE DUCKETT One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
dazar@milberg.com
nduckett@milberg.com

MILBERG LLP
ARIANA J. TADLER
1 Pennsylvania Plaza
New York, NY 10119
Telephone:  (212) 594-5300
Facsimile: (213) 868-1229
atadler@milberg.com

WESTERMAN LAW CORP.
JEFF WESTERMAN
JORDANNA G. THIGPEN
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 698-7450
Facsimile: (310) 201-9160
jwesterman@jswlegal.com
jthigpen@jswlegal.com

*Counsel for Plaintiffs-Petitioners*

21

# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | ML 11–2274 DSF (PLAx) | Date | 10/7/13 |
|---|---|---|---|

| Title | In re Citimortgage, Inc. Home Affordable Modification Program ("HAMP") Litigation |
|---|---|

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order DENYING Plaintiffs' Motions for Class Certification (Docket No. 316, 319), DENYING Plaintiffs' Motions to Strike Testimony (Docket Nos. 382, 384), and DENYING Defendant's Motion to Strike the Class Certification Report of Ian Ayres (Docket No. 343)

## I.  INTRODUCTION

Plaintiffs move to certify eight statewide[1] classes of individuals: (1) whose home mortgages were serviced by CitiMortgage, Inc. (Citi); (2) who, since April 13, 2009, entered into a Home Affordable Modification Program (HAMP) Trial Payment Plan (TPP) Agreement; and (3) who made all payments required by their TPP agreements (HAMP TPP Classes).[2]  (Third Am. Consolidated Class Action Compl.  (TACCAC) ¶ 364.)  The classes do not include borrowers to whom Citi timely tendered either (1) a Home Affordable Modification Agreement (Modification Agreement) that complied with HAMP rules or (2) a "timely written denial of eligibility consistent with the terms of the

---

[1] Those are California, Florida, Illinois, Iowa, Maryland, Massachusetts, New Jersey, and Pennsylvania.

[2] Plaintiffs do not seek to certify a subclass of borrowers whose permanent modification agreements were repudiated.  (Pls.' Mem. of P. & A. in Supp. of Class Certification & Appointment of Class Counsel (Pls.' Mem.) 1 n.1.)  Plaintiffs also do not seek certification for breach of loan contracts other than TPP agreements.  (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

TPP." (Id. ¶ 364(a)–(b).)  Plaintiffs seek certification of the classes under Federal Rule of Civil Procedure 23(a) and (b)(1), (2), and (3).

## II.    LEGAL STANDARD

"A party seeking class certification must satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Rule 23(b)." Wang v. Chinese Daily News, Inc., — F.3d —, Nos. 08–55483, 08–56740, 2013 WL 4712728, at *2 (9th Cir. Sept. 3, 2013).  Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

The proponent bears the burden of demonstrating that class certification is appropriate. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).

The Supreme Court has "emphasized that it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Id. at 1432 (citations and internal quotation marks omitted).  This "analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. (citations and internal quotation marks omitted).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1194–95 (2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**III.   DISCUSSION**

### A.    Motions to Strike

Plaintiffs move to strike the testimony of Citi experts Angela E. Watson and Faten Sabry.  Citi moves to strike the testimony of Plaintiffs' expert Ian Ayres.

"Under Daubert [v. Merrell Dow Pharms, Inc., 509 U.S. 579, 597 (1993)], the trial court must act as a 'gatekeeper' to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards by making a preliminary determination that the expert's testimony is reliable."  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999)).  "Kumho made clear that Daubert's principles apply to 'technical and other specialized knowledge' as well."  Jinro America Inc. v. Secure Invests., Inc., 266 F.3d 993, 1004 (9th Cir. 2001).  "Daubert does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance."  Id.  "[A]n expert's 'inference or assertion must be derived by the scientific method' to be admissible."[3]  Id. (citing Daubert, 509 U.S. at 590).  "A trial court has broad latitude not only in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability."  Id. (citing Kumho Tire, 526 U.S. at 152).  As the Ninth Circuit has explained:  "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony."  Jinro, 266 F.3d at 1004 (quoting Daubert, 509 U.S. at 588 (citation and internal quotation marks omitted)).

The Court's discretion to decide what expert testimony to admit "'is discretion to choose among *reasonable* means of excluding expertise that is fausse and science that is junky.'"  Id. at 1005 (quoting  Kumho, 526 U.S. at 159 (Scalia, J., concurring)).

### 1.    Ayres

Citi's motion centers on imperfections in the Treasury Data and concludes that Ayres's analysis is necessarily fatally flawed because it relies on data that cannot routinely identify all relevant characteristics of each HAMP applicant.  But no data set is perfect.  The question under Daubert is not whether an expert's report relies on and

---

[3] In Ellis, the Ninth Circuit considered the admissibility of expert social science evidence and analysis.  657 F.3d at 982–83.  In describing the standard to be used in evaluating the admissibility of such evidence, Ellis referred to the "scientific method" and "scientific reliability and relevance."  Id. at 982.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

analyzes perfect data — if that were the inquiry, there would be no data-based expert testimony in federal court — but rather whether an expert's report is sufficiently reliable to warrant consideration.

As Plaintiffs point out, Ayers's report acknowledges the limitations of the Treasury Data and uses Citi's internal data as a check. (Decl. of David Azar in Supp. of Mot. to Certify Class Ex. 4, Class Certification Report of Ian Ayres (Ayres Report) ¶¶ 76–77.) Ayres uses several data sources, not only the Treasury Data, and does so in a manner that iteratively refines and increases the accuracy of his analysis of the Treasury Data. (See, e.g., id. ¶¶ 75, 80.) He systematically examines available and relevant data in the form of the Treasury Database, adjusted as necessary by reference to other relevant and available databases, and comes to certain conclusions regarding identification of potential class members. His methodology is sufficiently reliable under Daubert to warrant consideration at the class certification stage.

Citi further criticizes the Ayres Report as failing to account for numerous discrepancies in several data fields, including his alleged failure to account for extensions of the trial period. However, as Plaintiffs point out, Ayres's reply report clarifies that his use of Citi's internal databases permits him to adjust his analysis at a classwide level for shortcomings in the Treasury Data. (Decl. of Jordanna G. Thigpen in Supp. of Pls.' Mot. to Strike Testimony of Dr. Faten Sabry, Ex. 1, Reply Report of Ian Ayres (Ayres Reply) ¶ 37.) When considering that "Rule 702 is applied consistent[ly] with 'the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barriers to opinion testimony," Jinro, 266 F.3d at 1004, the Court concludes Ayres's identification strategy meets the Rule 702 admissibility standard and his report and its class identification strategy are sufficiently reliable to warrant consideration.

As to damages, Ayres's strategy is, in essence, to determine the difference between the hypothetical situation in which permanent modification occurred and the reality of a modification denial. (See Ayres Reply ¶ 39.) Ayres uses both Treasury Data and Citi internal data in computing these figures and indicates that his analysis is flexible. (Id. ¶ 40.) Plaintiffs have demonstrated that Ayres's testimony may well be relevant to this litigation and that Ayres applied a reliable and consistent methodology in developing a damage formula. As Ayres's testimony is sufficiently reliable, shortcomings in his testimony go to the weight and credibility of his argument. Citi's motion to strike is denied.

### 2. Watson

Citi has established that Watson has experience in relevant portions of the mortgage industry, (Decl. of Steven E. Rich in Opp'n to Mot. to Certify Class (Rich Decl.), Ex. 6, Expert Report of Angela E. Watson ¶¶ 1–4), and that she is providing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

opinions within her established expertise.  She is at least minimally qualified and her
expert report provides background and insight into relevant issues, such as how the
relevant HAMP programs have changed, (id. ¶¶ 41–55), and how HAMP operates, (e.g.,
id. ¶ 56–57).  The testimony is not more prejudicial than probative.  Plaintiffs' motion to
strike is denied.

>        **3.        Sabry**

        That Sabry has not worked in the mortgage industry, with HAMP, or with
consumer finance is not, standing alone, a reason for exclusion under Federal Rule of
Evidence 702 and Daubert.  The question is whether her testimony and methods are
sufficiently reliable and relevant to render them useful to the inquiry at hand.  They are.
Sabry is, in essence, a rebuttal expert to Ayres.  For this purpose, Sabry's testimony, as
supported by her qualifications and examination of Ayres's report, is sufficiently reliable
to establish its admissibility.  As with Ayres's testimony and his use of imperfect, but
relevant and useful data, Sabry's failure to deal with the entire universe of documents is
not a reason for exclusion.  Sabry's testimony is not more prejudicial than probative.  As
Sabry's expert report is sufficiently reliable and relevant to permit the Court to conclude
that it is admissible, other shortcomings in the data and documents she considered go to
the weight and credibility of her testimony.  Plaintiffs' motion to strike is denied.

>    **B.        Class Certification**

>        **1.        Commonality**

        Rule 23(a)(2) requires that there be "questions of law or fact common to the class."
"The commonality requirement serves chiefly two purposes:  (1) ensuring that absentee
members are fairly and adequately represented; and (2) ensuring practical and efficient
case management."  Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal
quotation marks omitted).  Courts look for "shared legal issues or a common core of
facts."  Id.  It is unnecessary for both to be present.  Id.  Where diverging facts underlie
the individual claims of class members, courts consider whether the issues "at the heart"
of those claims are common such that the class vehicle would "facilitate development of a
uniform framework for analyzing" each class member's situation.  Id. at 1123.  The class
claims "must depend on a common contention," which "must be of such a nature that it is
capable of classwide resolution — which means that determination of its truth or falsity
will resolve an issue that is central to the validity of each one of the claims in one stroke."
Wal-Mart Stores, Inc. v. Dukes, — U.S. —, 131 S. Ct. 2541, 2551 (2011) (citation
omitted)).  The standard for finding commonality is "permissive[]" and "less rigorous

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

than the companion requirements of Rule 23(b)(3)." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs bear the burden of establishing that they have met the commonality requirement. <u>See</u> <u>Comcast</u>, 133 S. Ct. at 1432.

As discussed at the September 16, 2013 hearing, Plaintiffs assert that the common question of law is whether Citi breached the TPP by failing to provide a permanent modification or a written denial by the Modification Effective Date (MED). (Hearing Tr. 10:10–15, 11:3–22, Sept. 16, 2013.) When stated in this simplistic manner, this is a common question of law that is capable of classwide resolution. Resolution of this question potentially would "resolve an issue that is central to the validity of each one of the claims in one stroke." This is so, as Plaintiffs contend, even if the answer is "no," and the litigation therefore ends – at least in class form. For the reasons discussed at the hearing[4] and after considering the arguments in the parties' briefs, the Court concludes that Plaintiffs have met their burden under Rule 23(a)(2). The Court does not address the other Rule 23(a) factors as it finds that certification is not warranted under Rule 23(b)(1), (2), or (3).

### 2. Rule 23(b)(1)

In a footnote in their moving papers, Plaintiffs make a conclusory argument that certification under Rule 23(b)(1) is appropriate and cite three district court cases without providing any substantive explanation as to why the reasoning in those cases would support certification on the facts and law in this case. (Pls.' Mot. 16 n.15.) In their reply papers, Plaintiffs, again in a footnote, state only that they "do not concede that Rule 23(b)(1) certification is inappropriate" and state that <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180 (9th Cir. 2001) does not apply here. (Pls.' Reply 14 n.18.) Plaintiffs' reply fails to provide any substantive analysis supporting certification on the facts and law in this case. Plaintiffs bear the burden of demonstrating that Rule 23(b)(1) certification is proper. <u>Comcast</u>, 133 S. Ct. at 1432. Plaintiffs' discussion of the issue is so cursory that does not come close to satisfying that burden.

### 3. Rule 23(b)(2)

"Rule 23(b)(2) permits class actions for declaratory or injunctive relief if 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

---

[4] Citi's counsel eventually conceded that this is a common question, but argued that it does not predominate. (Hearing Tr. 16:7-16.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

the class as a whole . . . .'" <u>Ellis</u>, 657 F.3d at 986. "Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." <u>Id.</u> (citation and internal quotation marks omitted).

After <u>Wal-Mart</u>, it is clear that putative classes seeking individual monetary claims must seek Rule 23(b)(3) certification. <u>Wang</u>, 2013 WL 4712728, at *4 (citing <u>Wal-Mart</u>, 131 S. Ct. at 2559–60.) Plaintiffs seek individual monetary damages and therefore must certify their proposed class, at least in part, under Rule 23(b)(3). However, Plaintiffs argue that their proposed class may be certified under Rule 23(b)(2) with respect to (1) enjoining Citi from assessing interest, fees, and other charges "that would not have been due if their TPPs had been honored," and (2) corrective credit reporting "consistent with their agreements as opposed to credit reporting as if they were in default." (Pls.' Mot. 25; <u>see also</u> Pls.' Reply 20.)

 "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." <u>Wal-Mart</u>, 131 S. Ct. at 2557 (citation and quotation marks omitted). "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." <u>Id.</u> "It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." <u>Id.</u>

As discussed below, determination of whether Citi was required to or did issue a written denial by the MED is not enough to determine what injunctive relief a class member deserves. As evidenced by the motions for summary judgment, (<u>see, e.g.</u>, Docket Nos. 355, 356), Citi may have properly assessed certain interest, fees, and other charges, for example, as a result of late payments made before the trial period began or after the trial period ended. An individualized inquiry would be necessary to determine: (1) which interest, fees, and other charges Citi improperly assessed, (2) which interest, fees, and charges Citi should be enjoined from applying to class members' accounts moving forward, and (3) which charges or payments were improperly reported to credit bureaus. Plaintiffs have not demonstrated that certification under Rule 23(b)(2) is appropriate standing alone or in conjunction with Rule 23(b)(3) certification.

### 4.    Rule 23(b)(3)

Class certification is permissible if the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Id.  "The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Wang, 2013 WL4712728, at *5 (citation and internal quotation marks omitted).  Plaintiffs have not shown that common questions of law or fact predominate over individual questions or that the proposed classes are sufficiently cohesive to warrant certification under Rule 23(b)(3).

As evidenced by the motions for summary judgment, determination of the deadline by which Citi was required to provide either a permanent modification or a written denial cannot be made simply by identifying the MED as stated in the TPP.  The deadline may also have been affected by the parties' course of conduct, changes in income, inaccurately or incompletely reported income, oral and written representations regarding documentation still needed and other modification options, applicable Treasury Directives, and other considerations.  (See, e.g., Docket Nos. 355, 356.)  These determinations are critical to evaluating whether Citi breached the TPP, whether Plaintiffs are entitled to any damages as a result of the breach, and the amount of any such damages.  Although the Court may not engage in "free-ranging merits inquiries at the certification stage," Amgen, 133 S. Ct. at 1194, it is clear that an evaluation of the merits of the proposed class claims would require significant individualized inquiry.

These same heterogeneity problems plague Plaintiffs' proposed promissory estoppel, implied covenant, and consumer protection classes.  Individual representations made by Citi to individual plaintiffs are critically important in determining whether, under the state law of each proposed class, for example, reliance was reasonable, whether a reasonable consumer would be likely to be deceived, and whether a promise was clear.

Further, the proper measure of damages can be affected by a wide range of issues, many of which are unrelated to the MED.  As Citi points out, some borrowers may default even on a modified payment.  The addition of this factual scenario would greatly increase the difficulty of determining a classwide measure of damages.  Plaintiffs have

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

failed to propose a method of measurement that can be applied classwide and ties breach of contract and other legal theories to liability and a reliable measure of damages. Plaintiffs have failed to meet the requirements of Rule 23(b)(3).  See Comcast, 133 S. Ct. at 1433 (rejecting the concept that "at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide" and requiring plaintiffs bringing an antitrust suit to "tie each theory of antitrust impact to a calculation of damages" (citation and internal quotation marks omitted)).

In addition, it is clear that a class action, as currently proposed by Plaintiffs, is not the superior means of dealing with the incredible variety of individual issues.

## IV.   CONCLUSION

Plaintiffs have failed to demonstrate that class certification is appropriate under Federal Rules of Civil Procedure 23(b)(1), (2), or (3).  Plaintiffs' motion for class certification is DENIED.

IT IS SO ORDERED.

# EXHIBIT 2

# HELPING YOU STAY IN YOUR HOME.

You may be able to make your payments more affordable.

**Act now to get the help you need!**

**Investor Loan #:** ▮▮▮▮▮▮

## HOME AFFORDABLE MODIFICATION TRIAL PERIOD PLAN

### (Step One of Two-Step Documentation Process)

**Trial Period Plan Effective Date (Beginning of Trial Period):** 10 | 1 | 09

**Borrower ("I"):** KAREN B GROVER,

**Lender ("Lender"):** CitiMortgage, Inc.

**Date of first lien Security Instrument ("Mortgage") and Note ("Note"):** 12 | 20 | 06

**Loan Number:** ▮▮▮▮▮▮

**Property Address ("Property"):** ▮▮▮▮▮▮▮▮▮

**City:** WATERTOWN                                          **State:** MA        **Zip:** 02472

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (I) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to permit verification of all of my income (except that I understand that I am not required to disclose any child support or alimony unless I wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer"). I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. This Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

**1. My Representations. I certify, represent to Lender and agree:**

    A.  I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

    E.  Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

    F.  If Lender requires me to obtain credit counseling, I will do so.

    G.  I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Plan.

**Citi never sleeps**

**citi**

**Page 1 of 3**    ¹If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

CONFIDENTIAL

CITI HAMP MDL041721

CITI HAMP MDL041721

**Trial Period Plan**

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("*Trial Period Payment*"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $ 1078.5 .

| Trial Period Payment # | Trial Period Payment | Due Date On or Before | | |
|---|---|---|---|---|
| 1 | $ 1078.5 | 10 | 1 | 09 |
| 2 | $ 1078.5 | 11 | 1 | 09 |
| 3 | $ 1078.5 | 12 | 1 | 09 |
| 4 | $ NA | NA | NA | NA |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below.

During the period (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A.  TIME IS OF THE ESSENCE under this Plan;

B.  Except as set forth in Section 2.C. below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessary to continue the foreclosure action, all rights to such notices being hereby waived to the extent permitted by applicable law;

C.  If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the *foreclosure sale will not be suspended and the lender may foreclose if I have not made each and every Trial Period Payment that is due before the scheduled foreclosure sale*. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D.  *The Lender will hold the payments received during the Trial Period in a non-interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full*. If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E.  When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F.  If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not *be modified and this Plan will terminate*. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G.  I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan. If under the Lender's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position *and is fully enforceable, I understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Lender has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Lender determines necessary*.

Page 2 of 3



CONFIDENTIAL

CITI HAMP MDL041722

CITI HAMP MDL041722

**Trial Period Plan**

3. **The Modification.** I understand that once Lender is able to determine the final amounts of unpaid interest and any other delinquent amounts (except late charges) to be added to my loan balance and after deducting from my loan balance any remaining money held at the end of the Trial Period under Section 2.D. above, the Lender will determine the new payment amount. If I comply with the requirements in Section 2 and my representations in Section 1 continue to be true in all material respects, the Lender will send me a Modification Agreement for my signature which will modify my Loan Documents as necessary to reflect this new payment amount and waive any unpaid late charges accrued to date. If the Loan Documents provide that the note and mortgage may be assumed by a transferee of an interest in the property, the Modification Agreement will provide that, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Upon execution of a Modification Agreement by the Lender and me, this Plan shall terminate and the Loan Documents, as modified by the Modification Agreement, shall govern the terms between the Lender and me for the remaining term of the loan.

4. **Additional Agreements.** I agree to the following:

   A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Plan, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

   B. To comply, except to the extent that they are modified by this Plan, with all covenants, agreements, and requirements of Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, Impounds, and all other payments, the amount of which may change periodically over the term of my loan.

   C. That this Plan constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account. If the Loan Documents do not currently have Escrow Account provisions, such Escrow Account provisions, including such provisions as determined necessary to conform the Loan Documents to industry standards, shall be added in the Modification Agreement.

   D. That all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

   E. Intentionally blank.

   F. That Lender will collect and record personal information such as my name, address, telephone number, social security number, credit score, income, payment history, and information about account balances and activity. I understand and consent to the disclosure of my personal information by Lender to the U.S. Department of Treasury, Fannie Mae and Freddie Mac in connection with the Home Affordable Modification program.

In Witness Whereof, the Lender and I have executed this Plan.

| | |
|---|---|
| _____ | _Karen B. Rose_ (Seal) |
| Lender | Borrower |
| | |
| _____ | _9/15/09_ |
| By | Date |
| | |
| _____ | _____ (Seal) |
| Date | Borrower |
| | |
| | _____ |
| | Date |

Page 3 of 3

**citi**

©2009 CitiMortgage, Inc. CitiMortgage, Inc. does business as CitiCorp Mortgage in MN. CitiMortgage, Inc. is an equal housing lender. CITI, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. Citi Never Sleeps is a service mark of Citigroup Inc.
This is an attempt to collect a debt and any information obtained will be used for that purpose.
The Making Home Affordable program was created to help millions of homeowners refinance or modify their mortgages. As part of this program, Fannie Mae/Freddie Mac (the owner of your loan), your servicer, and the Federal Government are working to offer you options to help you stay in your home.

CONFIDENTIAL

CITI HAMP MDL041723

CITI HAMP MDL041723

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 21, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

☐ I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

☒ Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  I have mailed the foregoing document by First-Class Mail, postage prepaid, to the following participants listed on the attached Service List.

_____
CECILLE CHAFFINS

## CitiMortgage

Case No. 11-ml-2274 DSF (PLAx)
MDL Case No. 2274

| | |
|---|---|
| David Azar<br>Nicole Duckett<br>**MILBERG LLP**<br>One California Plaza<br>300 S. Grand Avenue, Suite 3900<br>Los Angeles, CA 90071<br>Telephone: (213) 617-1200<br>Facsimile: (213) 617-1975<br>dazar@milberg.com<br>ndfricke@milberg.com | **Counsel for Plaintiffs: Beverly King, Nancy Glennon, Audrey Pierson, Hugh Pierson**<br>C.D. California, No. 2: 10-cv-03792-DSF-PLAx |
| Ariana Tadler<br>**MILBERG LLP**<br>One Pennsylvania Plaza, 49th Floor<br>New York, NY 10119<br>Telephone: (212) 594-5300<br>Facsimile: (212) 868-1229<br>atadler@milberg.com | |
| Jeff S. Westerman<br>Jordanna G. Thigpen<br>**WESTERMAN LAW CORP.**<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>Telephone: (310) 698-7450<br>Facsimile: (310) 201-9160<br>jwesterman@jswlegal.com<br>jthigpen@jswlegal.com | |
| Gary Klein<br>Shennan Kavanagh<br>Kevin Costello<br>Marjorie Charney<br>**KLEIN KAVANAGH COSTELLO, LLP**<br>85 Merrimac Street, 4th Floor<br>Boston, Massachusetts 02114<br>Telephone: (617) 357-5500<br>Facsimile: (617) 357-5030<br>Emails: klein@kkcllp.com<br>kavanagh@kkcllp.com<br>costello@kkcllp.com<br>charney@kkcllp.com | **Counsel for Plaintiffs: Davidson Calfee, Robert Gatti, Daniel Korzep, Karen Grover**<br>D. Massachusetts, No. 1:10-cv-12051-WGY |
| Charles M. Delbaum<br>Stuart T. Rossman<br>**NATIONAL CONSUMER LAW CENTER** | |

| | |
|---|---|
| 7 Winthrop Square, 4th Floor<br>Boston, MA 02110<br>Telephone: (617) 542-8010<br>Facsimile:  (617) 542-8033<br>Email: cdelbaum@nclc.org<br>srossman@nclc.org | |
| Rosemary M. Rivas<br>Danielle A. Stoumbos<br>**FINKELSTEIN THOMPSON LLP**<br>505 Montgomery St., Suite 300<br>San Francisco, California 94111<br>Telephone: (415) 398-8700<br>Facsimile: (415) 398-8704<br>rrivas@finkelsteinthompson.com<br>dstoumbos@finkelsteinthompson.com | **Counsel for Plaintiffs: Hanna Bernard,** C.D. California, 2:10-cv-6292-DSF<br>**Carla Chui, Maurizio Verdini, Elizabeth Daniel,** C.D. California, 2:10cv7385 |
| Mila F. Bartos<br>**FINKELSTEIN THOMPSON LLP**<br>James Place<br>1077 30th St., N.W.<br>Suite #150<br>Washington DC 20007<br>Telephone: (202) 337-8000<br>Facsimile: (202) 337-8090<br>mbartos@finkelsteinthompson.com | |
| Andrew J. Garcia<br>Carlin J. Phillips<br>**PHILLIPS & GARCIA, P.C.**<br>13 Ventura Drive<br>Dartmouth, MA 02747<br>Telephone: (508) 998-0800<br>Facsimile: (508) 998-0919<br>agarcia@phillipsgarcia.com<br>cphillips@phillipsgarcia.com | |
| James C. Sturdevant<br>**THE STURDEVANT LAW FIRM**<br>354 Pine Street, 4th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 477-2410<br>Facsimile: (415) 477-2420<br>jsturdevant@sturdevantlaw.com | |
| Maeve Elise Brown<br>Elizabeth S. Letcher<br>**HOUSING AND ECONOMIC RIGHTS ADVOCATES**<br>1814 Franklin Street, Suite 1040<br>Oakland, CA 94612<br>Telephone: (510) 271-8443<br>Facsimile: (510) 868-4521 | |

| | |
|---|---|
| melisebrown@heraca.org<br>eletcher@heraca.org | |
| Gene Joseph Stonebarger<br>**STONEBARGER LAW**<br>75 Iron Point Circle, Suite 145<br>Folsom, CA 95630<br>Telephone: (916) 235-7141<br>Facsimile: (916) 235-7141<br>gstonebarger@stonebargerlaw.com | **Counsel for Plaintiff: Balbir Singh**<br>E.D. California, No. 2: 11-cv-00793-KJM-GGH |
| Charles E. Schaffer<br>**LEVIN, FISHBEIN, SEDRAN &**<br>**BERMAN**<br>510 Walnut Street, Suite 500<br>Philadelphia, Pennsylvania 19106<br>Telephone: (877) 882-1011<br>Facsimile:  (215) 592-4663<br>CSchaffer@lfsblaw.com | |
| Mark Richard Miller<br>**WEXLER WALLACE LLP**<br>55 W. Monroe Street *3300<br>Chicago, IL 60603<br>Telephone: (312) 346-2222<br>Facsimile: (312) 346-0022<br>rnrm@wexlerwallace.com | **Counsel for Plaintiffs: Leslie**<br>**Barry, John Petrides, Maria**<br>**Petrides**<br>N.D. Illinois, No. 1: 11-cv-02918 |
| Sherrie R. Savett<br>Russell D. Paul<br>Eric Lechtzin<br>**BERGER & MONTAGUE, PC**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-5715<br>ssavett@bm.net<br>rpaul@bm.net<br>elechtzin@bm.net | |
| Mark J. Tamblyn<br>**WEXLER WALLACE LLP**<br>455 Capitol Mall, Suite 231<br>Sacramento, CA 95814<br>Telephone: (916) 492-1100<br>Facsimile: (916) 492-1124<br>mjt@wexlerwallace.com | |
| Sandra W. Cuneo<br>**CUNEO GILBERT & LADUCA, LLP**<br>11620 Wilshire Boulevard, Suite 900<br>Los Angeles, CA 90025<br>Telephone:  (310) 582-5939 | **Counsel for Plaintiff Keith Goodyk**<br>Case No. 11-ml-2274-DSF |

25

| | |
|---|---|
| Facsimile: (310) 582-5943<br>Email: scuneo@cuneolaw.com | |
| Jonathan W. Cuneo<br>Alexandra C. Warren<br>Brendan S. Thompson<br>Charles J. LaDuca<br>**CUNEO GILBERT & LADUCA LLP**<br>507 C Street NE<br>Washington DC 20002<br>Telephone: (202) 789-3960<br>Facsimile: (202) 789-1813<br>jonc@cuneolaw.com<br>awarren@cuneolaw.com<br>brendant@cuneolaw.com<br>charles@cuneolaw.com | **Counsel for Plaintiff: Brian Costigan**<br>S.D. New York, No. 1:10-cv-08776-SAS<br><br>**Counsel for Plaintiff: Keith Goodyk**<br>Case No. 11-ml-2274-DSF |
| Gerald W. Crawford<br>Nicholas J. Mauro<br>**CRAWFORD QUILTY & MAURO LAW FIRM**<br>1701 Ruan Center<br>666 Grand Avenue<br>Des Moines, IA 50309<br>Telephone: (515) 245-5420<br>Facsimile: (515) 245-5421<br>crawford@crawfordlawfirm.com<br>mauro@crawfordlawfirm.com | |
| Robert Shelquist<br>**LOCKRIDGE GRINDAL & NAUEN PLLP**<br>100 Washington Ave S., Suite 2200<br>Minneapolis, MN 55401<br>Telephone: (612) 339-6900<br>Facsimile: (612) 339-0981<br>Email: rkshelquist@locklaw.com | |
| Eric D. Holland<br>Randall Seth Crompton<br>**HOLLAND GROVES SCHNELLER STOLZE**<br>300 N. Tucker Suite 801<br>St. Louis, MO 63101<br>Telephone: (877) 255-3352<br>Facsimile: (314) 241-5554<br>eholland@allfela.com<br>scrompton@allgfella.com | |
| J. Barton Goplerud<br>**HUDSON MALLANEY SHINDLER ANDERSON P.C.**<br>5015 Grand Ridge Drive, Suite 100 | |

26

| | |
|---|---|
| West Des Moines, Iowa 50265<br>Telephone: (515) 223-4567<br>Facsimile: (515) 223-8887<br>jbgoplerud@hudsonlaw.net | |
| Lawrence J Friscia<br>**FRISCIA & ASSOCIATES LLC**<br>17 Academy Street, Penthouse<br>Newark, NJ 07102<br>Telephone: (973) 500-8024<br>Facsimile: (888) 809-3747<br>Email: lawrence.friscia@friscialaw.com | |
| David Ian Greenberger<br>Matthew James McDonald<br>**LIDDLE & ROBINSON LLP**<br>800 Third Avenue, 8th Floor<br>New York, NY 10022<br>Telephone: (212) 687-8500<br>Facsimile: (212) 687-1505<br>Email: dgreenberger@liddlerobinson.com<br>mmcdonald@liddlerobinson.com | |
| Lisa J. Rodriguez<br>Nicole M. Acchione<br>**TRUJILLO, RODRIGUEZ &**<br>**RICHARDS, LLP**<br>258 Kings Highway East<br>Haddonfield, NJ 08033<br>Telephone: (856) 795-9002<br>Facsimile: (856) 795-9887<br>Email: lisa@trrlaw.com<br>nacchione@trrlaw.com | **Counsel for Plaintiffs: Juan Silva,**<br>**Elizabeth Silva Farias**<br>D. New Jersey, No. 2: 11-cv-01432-<br>WHW-CCC<br><br>**And for Plaintiff: Jo Ann**<br>**Gastineau**<br>D. New Jersey, No. 3: 11-cv-02773-<br>AET-TJB |
| Sherrie R. Savett<br>Russell D. Paul<br>Eric Lechtzin<br>**BERGER & MONTAGUE, PC**<br>1622 Locust Street<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-5715<br>Email: ssavett@bm.net<br>rpaul@bm.net<br>elechtzin@bm.net | **Counsel for Plaintiff: William T.**<br>**Whiting**<br>E.D. Pennsylvania, No. 2: 11-cv-<br>02318-ER<br><br>**And for Plaintiffs: David G.**<br>**DeRosa, Erin N. Logan, Janie L.**<br>**Glover, Minnie Glover, James A.**<br>**Garcia, Jennifer Garcia, Renee**<br>**Johnson, Stephen B. Johnson**<br>E.D. Pennsylvania, No. 2: 11-cv-<br>02914-ER |
| Elizabeth D. Mann<br>Steven E. Rich<br>**MAYER BROWN LLP**<br>350 South Grand Avenue, 25th Floor<br>Los Angeles, CA 90071-1503<br>Telephone: (213) 229-9500 | **Counsel for CitiMortgage, Inc.** |

27

| | |
|---|---|
| Facsimile: (213) 625-0248<br>Email: emann@mayerbrown.com<br>srich@mayerbrown.com | |
| Lucia Nale (Pro Hac Vice)<br>Debra Bogo-Ernst (Pro Hac Vice)<br>Stephen J. Kane (Pro Hac Vice)<br>**MAYER BROWN LLP**<br>71 S. Wacker Drive<br>Chicago, IL 60606<br>Telephone: (312) 782-0600<br>Facsimile:  (312) 701-7711<br>Email: lnale@mayerbrown.com<br>dernst@mayerbrown.com<br>skane@mayerbrown.com | **Counsel for CitiMortgage, Inc.** |
| Marc C. Singer<br>**SAIBER LLC**<br>18 Columbia Turnpike, Suite 200<br>Florham Park, NJ 07932 | |
| Janet Sue Legg<br>Scott C. Borison<br>Phillip Rease Robinson<br>**LEGG LAW FIRM, LLC**<br>Francis Scott Key Mall<br>5500 Buckeystown Pike<br>Frederick, MD 21703<br>Phone: (301) 620-1016<br>Fax: (301) 620-1018<br>legg@legglaw.com<br>borison@legglaw.com<br>probinson@legglaw.com | **Counsel for Plaintiffs: Joaquin Sequeira, Ernest Lunsford**<br>C.D. California, No. 11-cv-9179-DSF (PLAx) |